# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: July 27, 2017

Mr. Melvin Houston
Law Office
15346 Asbury Park
Detroit, MI 48227-0000

          Re: Case No. 16-2536, *Elizabeth Jeup v. Michigan Bell Telephone Co.*
               Originating Case No. : 2:14-cv-11950

Dear Counsel,

  The Court issued the enclosed (Order/Opinion) today in this case.

                        Sincerely yours,

                        s/Roy G. Ford
                        Case Manager
                        Direct Dial No. 513-564-7016

cc: Ms. Laura A. Lindner
     Mr. David J. Weaver

Enclosure

Mandate to issue

<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 17a0444n.06

Case No. 16-2536

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

> **FILED**
> Jul 27, 2017
> DEBORAH S. HUNT, Clerk

| | |
|---|---|
| SEAN BRISTER,<br>    Plaintiff, | )<br>)<br>) |
| ELIZABETH JEUP,<br>    Plaintiff-Appellant, | )<br>)<br>)<br>)<br>) |
| v. | )<br>) |
| MICHIGAN BELL TELEPHONE CO.,<br>    Defendant-Appellee. | )<br>)<br>) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**BEFORE: GIBBONS, KETHLEDGE, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** Plaintiff Elizabeth Jeup appeals the district court's grant of summary judgment in favor of Defendant in this action for retaliation in violation of the Family and Medical Leave Act ("FMLA") and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"). Because we find that the district court's grant of summary judgment for Defendant was proper, we **AFFIRM**.

I.

Jeup was an employee of Michigan Bell Telephone Co. ("Michigan Bell"), a company that provides telecommunications services under the AT&T brand, from 1999 until she left her employment in 2011. In 2008, Jeup began working as a First Level Sales Manager at Michigan

2:14-cv-11950-LJM-APP Doc # 50 Filed 07/27/17 Pg 3 of 9 Pg ID 1096 (3 of 9)
Case: 16-2536 Document: 25-2 Filed: 07/17/2017 Page: 2096
Case No. 16-2536, *Brister, et al. v. Mich. Bell Telephone Co.*

Bell's Port Huron Call Center.[1] As a First Level Sales Manager, Jeup was responsible for supervising a group of sales representatives and was required to "[d]irect[] work activities to achieve volume expected to meet operational goals and unit and revenue objectives"; "[p]rovide[] feedback, coaching, training, motivation, and support to representatives"; "[c]ounsel[] and advise[] representatives regarding performance and discipline"; and "[m]ake[] suggestions and recommendations as to the hiring, firing, advancement, promotion, and other status changes for employees under [her] supervision." (R. 29-2, PageID # 225.) Jeup reported to a Center Sales Manager ("CSM"), and the CSM reported to a General Manager. During the time relevant to Jeup's complaint, beginning about April 2011, the CSM she reported to was Cheryl Keeling, and the General Manager was Geoffrey Lee.

According to Jeup, Keeling and Lee began to pressure the managers to target Michigan Bell employees who took FMLA or disability leave and either terminate them or force them to quit. Jeup also alleged that she was directed to engage in unethical and deceptive sales practices when selling products to Michigan Bell customers. Particularly, Jeup alleged that on more than one occasion, Keeling told her "it's them or you." (R. 29-32, PageID # 578.) According to Jeup, she believed that this statement was in reference to Keeling's desire for Jeup to target for removal employees that used FMLA and disability leave. Jeup alleges that when she refused to target employees that used company–approved FMLA and disability leave, Keeling began subjecting her to "relentless harassment, verbal abuse, [and] bad treatment in front of [Jeup's] peers on a daily basis." (R. 1, PageID # 14.)

During a July 2011 meeting with Lee and several other managers, it was brought to Lee's attention that there were problems with Keeling. Jamie Proctor, a fellow manager, commented

---

[1] Jeup was apparently first promoted to the First Level Sales Manager position in 2002, then again promoted to a Process Manager in 2006. However, she returned to the First Level Sales Manager position after the Process Manager position was eliminated in 2008.

- 2 -

2:14-cv-11950-LJM-EAS Doc # 50 Filed 07/27/17 Pg 4 of 9    Pg ID 1097    (4 of 9)

Case No. 16-2536, *Brister, et al. v. Mich. Bell Telephone Co.*

that Keeling had been "picking on" Jeup. While it does not appear that Jeup shared the reasons she thought Keeling was picking on her, she did share examples of how Keeling criticized her, telling Jeup things like she should stop making excuses about her sale and retention numbers. Following this meeting, Lee spoke to Keeling about the complaints from the managers she supervised. According to Jeup, Keeling may have backed off for a week or two, but then her treatment of Jeup became much worse.

On August 19, 2011, Jeup sent Lee an email with a subject line that read "Resignation." In the email, Jeup purported to give her two weeks' notice, explaining that: "I am in a current situation where I am unable to communicate with my immediate supervisor." (R. 29-6, PageID # 241.) The next day, Jeup called Defendant's Equal Employment Opportunity hotline. Jeup reported that Keeling had been verbally abusive to her and other employees for "unknown reasons." Jeup further reported that Keeling's actions had been reported to Lee, and that things improved for a little while, but Keeling went back to her old ways not too long after. Additionally, Jeup complained that Keeling was rude and degrading to her, telling her things like "[e]veryone in the office hates you," and that she was tired of fielding complaints about Jeup. (R. 29-30, PageID # 516.) Jeup also stated that she did not know why Keeling treated employees in this manner, but that she wanted to report this so that "the people who remain in the office [could] be treated in a more professional manner and not be fearful of going to work everyday [sic]." (*Id.*)

On May 15, 2014, Jeup filed her complaint in the district court.[2] The complaint alleged retaliation in violation of the FMLA, 29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(a)(2); and the

---

[2] Jeup filed her complaint along with Co-Plaintiffs, Kelly Ashford-Porter, Lynda Howard, and Sean Brister. Plaintiffs Ashford-Porter and Howard voluntarily dismissed their claims to pursue binding arbitration, and the district court denied summary judgment on Plaintiff Sean Brister's claims. As a result, Jeup is the only plaintiff in this appeal.

- 3 -

2:14-cv-11950-LJM-EAS Doc # 50 Filed 07/27/17 Pg 5 of 9    Pg ID 1098    (5 of 9)

Case No. 16-2536, *Brister, et al. v. Mich. Bell Telephone Co.*

PWDCRA, Mich. Comp. Laws § 37.1101. According to Jeup, Lee and Keeling's actions forced her into resignation, thereby constituting a constructive discharge and intentional retaliation. The district court granted Defendant's motion for summary judgment, finding that Jeup had not put forth any direct evidence of discrimination, and had failed to prove a prima facie case of an FMLA retaliation claim.

## II.

We review de novo a district court's grant of summary judgment. *Mayhew v. Town of Smyrna, Tenn.*, 856 F.3d 456, 461 (6th Cir. 2017) (citing *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we must "consider the facts and any inferences drawn in the light most favorable to the non-moving party," *Savage v. Federal Express Corp.*, 856 F.3d 440, 446 (6th Cir. 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)), and we need only ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *id.* (quoting *Anderson*, 477 U.S. at 251).

## III.

Jeup's retaliation claim relies on the "retaliation or discrimination" theory under the FMLA, which makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). To prove that Michigan Bell engaged in prohibited FMLA retaliation, Jeup must show that her opposition to the directive to target FMLA users was a causal factor in her alleged constructive discharge. *Marshall v. The Rawlings Co.*, 854 F.3d 368, 376–77 (6th

2:14-cv-11950-GJM-EAS Doc # 50 Filed 07/27/17 Pg 6 of 9 Page ID 1099 (6 of 9)

Case No. 16-2536, *Brister, et al. v. Mich. Bell Telephone Co.*

Cir. 2017). She may do so by using either direct or circumstantial evidence. *Id.* at 377 (citation omitted). Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)). Evidence of this kind "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* (citation omitted).

On the other hand, a claim supported by circumstantial evidence must be evaluated under the *McDonnell Douglas* burden-shifting framework. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, the plaintiff carries the initial burden of establishing a prima facie case of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination. *Id.* at 802–03. If the employer makes this showing, the burden then shifts back to the employee to demonstrate that this reason was pretext. *Id.* at 804. A prima facie case of FMLA retaliation requires a plaintiff to show that: (1) she was engaged in an activity protected by the FMLA; (2) her exercise of protected activity was known to the defendant; (3) defendant thereafter took an adverse employment action against her; and (4) there was a causal connection between her exercise of protected activity and adverse employment action. *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003).[3]

---

[3] Like the FMLA, Section 602(a) of the PWDCRA prohibits retaliation against a person who opposes a violation of the PWDCRA, and a plaintiff must establish a prima facie case of retaliation under § 602(a) by showing that: (1) she engaged in protected activity; (2) this was known by the defendant; (3) the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the action adverse to the plaintiff. *Aho v. Dep't of Corr.*, 688 N.W.2d 104, 108 (Mich. Ct. App. 2004) (citations omitted). Both standards are materially identical, except that a plaintiff's burden on the causation element is higher in the PWDCRA context. *See id.* at 109 ("To establish a causal connection, a plaintiff must demonstrate that his

- 5 -

Case No. 16-2536, *Brister, et al. v. Mich. Bell Telephone Co.*

The district court first found that Jeup had not presented direct evidence of discrimination. Then, analyzing her claim under the burden-shifting *McDonnell Douglas* framework, the court found that Jeup had not established that she engaged in protected activity under the FMLA, that she was not constructively discharged, and that Jeup could not establish the requisite causation to succeed on her claim. Notwithstanding the district court's approach, we note that a fundamental burden that Jeup bears here is establishing that she was constructively discharged. *See Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005) (noting that a plaintiff must show constructive discharge as a threshold matter). This is a burden that she must meet regardless of whether we determine that she has presented direct evidence or whether we decide that she must proceed under the *McDonnell Douglas* framework.

We require a plaintiff alleging constructive discharge to show that: (1) the employer deliberately created intolerable working conditions, as a reasonable person would perceive them to be; and (2) the employer did so with the intent to force the employee to quit. *Id*. (quoting *Logan v. Denny's Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001)). "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined." *Id*. (quoting *Logan*, 259 F.3d at 569). Additionally, we have adopted the following non-exclusive factors to aid our determination of whether there has been a constructive discharge:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a [male] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early

---

participation in the protected activity was a 'significant factor' in the employer's adverse employment action, not merely that there was a causal link between the two events."). In any event, a failure to meet her burden under the FMLA is necessarily detrimental to Jeup's claim under the PWDCRA.

- 6 -

2:14-cv-11950-LJM-EAS Doc # 50 Filed 07/27/17 Pg 8 of 9    Pg ID 1101    (8 of 9)

Case No. 16-2536, *Brister, et al. v. Mich. Bell Telephone Co.*

> retirement or continued employment on terms less favorable than the employee's former status.

*Id*. (quoting *Logan*, 259 F.3d at 569).

From our review of the record, the only factor that Jeup can claim is relevant here is the "badgering, harassment, or humiliation" factor. There is no evidence that any harassment toward Jeup ever manifested in a demotion, reduction in salary, or reduction in job responsibilities. Rather, as evidence that she was being forced to resign, Jeup points to: (1) testimony from a fellow manager that he found Jeup crying from Keeling's unfair treatment; (2) testimony from a fellow manager that he observed Keeling harassing and treating Jeup abusively; (3) the fact that within a month of becoming Jeup's supervisor, Keeling began targeting her for humiliation and criticism at meetings; (4) comments from Keeling to Jeup degrading her and calling her stupid during their daily coaching sessions; (5) comments from Keeling to Jeup telling her that everyone in the office hated her and did not want her there; (6) comments from Keeling telling Jeup that she needed to seek psychological help and seek help from the employee assistance program; and (7) comments from Keeling to Jeup, stating "it's them or you" and that she needed to "learn to play the game."

Undoubtedly, Keeling's treatment of Jeup was shameful and highly inappropriate for a workplace; however, this, by itself, is insufficient to establish a claim of constructive discharge. Jeup has to show that these actions created "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Johnson v. Donahoe*, 642 F. App'x 599, 613 (6th Cir. 2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)). The facts of this case fall short of this standard. Initially, this alleged humiliating treatment began, according to Jeup, about a month after Keeling became her supervisor in April 2011, and lasted until August 2011. As compared to a case where a plaintiff had been subjected to this kind of treatment over the

2:14-cv-11950-LJM-EAS Doc # 50 Filed 07/27/17 Pg 9 of 9 Pg ID 1102 (9 of 9)

Case No. 16-2536, *Brister, et al. v. Mich. Bell Telephone Co.*

course of her entire employment, or even where it lasted more than approximately three to four months, we cannot find that Jeup has met her burden here. *See, e.g.*, *Weigold v. ABC Appliance Co.*, 105 F. App'x 702, 709 (6th Cir. 2004) (holding that the fleeting nature of the employer's comments, as opposed to remarks that spanned the course of the plaintiff's employment, precluded the finding of constructive discharge).

Even further, as the district court found, Jeup faces some difficulty in establishing the "employer's intent" element of her constructive discharge claim. As noted above, when Keeling's supervisor, Lee, was made aware of Jeup's concerns with Keeling, he talked to Keeling about it. And although Jeup asserts that it got worse, she admitted that the situation improved for the first couple of weeks following her complaint. Further, Jeup admits that she never complained about Keeling's renewed harassment, and this is evidenced by Lee's concern that the issue was never brought back to his attention before he received Jeup's resignation email. Had Jeup complained more than once, this would be a closer case. But we are not prepared to say that Defendant intended to force Jeup to resign when the evidence shows that Defendant tried to improve the situation when previously made aware of it. In sum, the record does not support a conclusion that Defendant created working conditions that were intolerable to a reasonable person, or that Defendant intended to force Jeup to resign. The district court properly found that no genuine issue of fact existed as to this claim, and that Defendant was entitled to summary judgment.

### IV.

Jeup's failure to show constructive discharge is fatal to her claim of retaliation both under the FMLA and the PWDCRA. For this reason, we find that the district court's grant of summary judgment was proper and we **AFFIRM**.